IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 19-78 |
| | : | |
| DARIUS CARTER | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                                                              December 8, 2022

This Memorandum addresses Defendant Darius Carter's objections to the Pre-Sentence Investigation Report ("PSR"). Because Carter "otherwise used" a weapon during both Hobbs Act robberies, and obstructed justice by threatening a witness and perjuring himself, his objections are overruled. Each issue will be addressed in turn.

First, Carter objects to the four-level enhancement added pursuant to U.S.S.G. § 2B3.1(b)(2)(D) for each count of Hobbs Act robbery, as noted in paragraphs 33 and 39 of the PSR. This enhancement applies when a dangerous weapon is "otherwise used" in the commission of a crime. According to the defense, the evidence presented at trial was that a BB gun was "brandished," rather than "otherwise used," so the offense level should only be increased by 3 levels *See* Def.'s Mem. 6, ECF No. 105.

According to U.S.S.G. § 1B1.1 cmt. n.1(C), "brandishing" occurs when "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." § 1B1.1 cmt. n.1(J) defines "otherwise used" as "conduct [that] did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." In *U.S. v. Johnson*, 199 F.3d 123 (3d Cir. 1999), the Third Circuit analyzed

1

the difference between these two acts. *Johnson*, 199 F.3d at 126. It found that brandishing involves an "implicit threat that force might be used," whereas a weapon is otherwise used when "the threat becomes more explicit." *Id.* If a firearm is "waved about in a generally menacing manner during a robbery," it is brandished. *Id.* at 127. If, on the other hand, a robber points a weapon "at a specific victim or group of victims to force them to comply," the weapon is otherwise used. *Id.* at 126. For example, in *U.S. v. Orr*, 312 F.3d 141 (3d Cir. 2002), the Third Circuit found that "pointing a gun at the head of the assistant manager and ordering her to empty money into a garbage bag was a 'specific threat' . . . and was precisely the type of conduct which satisfies the 'otherwise used' requirement." *Orr*, 312 F.3d at 145.

Carter's actions nearly identically mirror those of the defendant in *Orr*. *See id.* The evidence presented at trial showed that Carter issued threats and pointed a BB gun at store employees during both robberies with which he was charged. In the first robbery, Carter pointed the weapon at a victim, standing just a few feet away, and ordered her to open the cash register. PSR ¶ 8. In the second robbery, Carter pointed the BB gun at multiple victims and ordered them to move to behind the counter and open the register. *Id.* ¶ 9. In both cases, Carter's actions were more directly threatening than merely waiving a weapon about in a "generally menacing manner." *Johnson*, 199 F.3d at 127. Because Carter pointed the BB gun at the victims' heads, while simultaneously ordering them to act, he "otherwise used" the weapon, and the four-level enhancement under § 2B3.1(b)(2)(D) is appropriate.

Carter also objects to the two-level enhancement added for obstruction of justice due to witness intimidation pursuant to U.S.S.G. § 3C1.1. According to Carter, the evidence introduced at trial was insufficient to show he threatened a witness via text message. *See* Def.'s Mem. 8, ECF No. 105. The defense also opposes the government's suggested enhancement for false testimony,

pointing to a lack of evidence that Carter's trial testimony constituted a willful attempt to obstruct justice. *Id.* at 9.

Brittany Waller, Carter's ex-girlfriend, provided incriminating evidence against him in a signed statement to police, testified before the grand jury, and turned over some of his belongings to law enforcement. PSR ¶¶ 15-19. After receiving this information in discovery, Carter attempted to contact Waller through third parties. *Id.* ¶ 17. Waller then received text messages, linked to Carter's prison email account, asking "Why would want to betray me in such a matter why would you tell on me?," describing her statement to police as a "betrayal worst then death," and stating "You think your winnin now, but not for long if you knew what I know you would laugh less and cry more!" *Id.* ¶ 18. Ms. Waller reported the contact to a case agent, and testified at trial that Carter's conduct left her feeling threatened, intimidated, and afraid. *Id.* ¶ 25.

The government argues Carter's communications with Waller were "religious and emotional leverage in an attempt to intimidate" her from testifying. Gov.'s Mem. 9, ECF No. 106. Carter, however, contends the text messages were not threats. *See* Def.'s Mem. 8, ECF No. 105. Specifically, he suggests that the phrase "laugh less, cry more" is a reference to the Hadith, a sacred text of Islam, and that the quote was not intended to threaten Ms. Waller nor obstruct justice. *Id.* at 8 n.4. The defense argues the evidence at trial merely showed Carter was unhappy with the conduct of a former paramour, which is "insufficient to establish the defendant's subjective intent to threaten or terrorize Waller." *Id.* at 9.

In this context, a defendant acts "willfully" when he intentionally acts with the purpose of obstructing justice. *U.S. v. Belletiere*, 971 F.2d 961, 965 (3d Cir. 1992). Obstructive conduct under U.S.S.G. § 3C1.1 includes "threatening, intimidating, or otherwise unlawfully influencing" a witness. § 3C1.1 cmt. n.4(A). A district court is entitled to rely on circumstantial evidence and to

3

draw all reasonable inferences from the facts in determining whether a defendant acted willfully. *U.S. v. Hertzog*, 186 F. App'x 314, 318 (3d Cir. 2006).

Here, the evidence introduced at trial is sufficient to show by a preponderance of the evidence that Carter intended to obstruct justice. *See U.S. v. Kellam*, 751 F. App'x 184, 191 (3d Cir. 2018). The texts sent to Waller threatening "if you knew what I know you would laugh less and cry more," in connection with Carter's complaining of Waller's "betrayal," constitutes intimidating language. The timing of the texts—immediately after Carter received discovery—is highly suggestive of obstruction, as is Waller's fearful response. The logical inference to be drawn from these facts is that Carter acted with the intent to threaten Waller from testifying, and thereby to obstruct justice.[1]

The government also argues Carter's perjury further supports the application of an obstruction-of-justice enhancement. *See* Gov.'s Mem. 9, ECF No. 106. According to the government, Carter took the stand and intentionally testified falsely as to material facts, including his whereabouts at the time of the robberies and why he ordered a Glock-replica BB gun. *Id.* at 10. The government argues this testimony was "squarely at odds" with the other evidence presented against him, as well as the jury's verdict. *Id.* As with the enhancement for witness intimidation, Carter opposes this enhancement by arguing that the evidence at trial failed to show he had a "willful intent" to obstruct justice by providing false testimony. Def.'s Mem. at 9, ECF No. 105.

---

[1] Carter accuses the Court of impermissible judicial factfinding on willful obstruction thereby violating his right to a trial by jury. Def.'s Mem. 10-11, ECF No. 105 (citing *Apprendi v. N.J.*, 530 U.S. 466, 497 (2000)). However, the Sixth Amendment right "to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under an advisory Guidelines regime." *U.S. v. Grier*, 475 F.3d 556, 565-68 (3d Cir. 2007) (en banc). As the enhancements applied by this Court did not increase his statutory maximum or mandatory minimum sentence, Carter's rights were not violated. *U.S. v. Gonzalez*, 905 F.3d 165, 205-06 (3d Cir. 2018).

"A defendant who testifies under oath at trial commits perjury within § 3C1.1 if he [1] gives false testimony [2] concerning a material matter [3] with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *U.S. v. Napolitan*, 762 F.3d 297, 312 (3d Cir. 2014) (internal quotation marks and citation omitted). A sentencing court must make a factual finding on the record as to each of these elements. *U.S. v. Dunnigan*, 507 U.S. 87, 95 (1993).

In *United States v. Boggi*, 74 F.3d 470 (3d Cir. 1996), the Third Circuit found that a defendant's "flat denials," which were clearly contradicted by the jury's guilty verdict, were sufficient to constitute perjury and warrant a sentence enhancement under U.S.S.G. § 3C1.1. *Boggi*, 74 F.3d at 479. Similarly here, Carter flatly stated that he was not present at the scene of the crimes. *See* PSR ¶¶ 27-29. However, in finding him guilty, the jury necessarily found that he was indeed present. A "flat denial" about presence at the scene of the crime—a clearly material fact—is sufficient to show "false testimony with willful intent." *Boggi*, 74 F.3d at 479. The government has shown by a preponderance of the evidence that Carter perjured himself within the meaning of § 3C1.1.

However, a sentencing court may not impose two obstruction-of-justice enhancements for two separate incidents of obstruction. *U.S. v. Willis*, 523 F.3d 762, 769 (7th Cir. 2008).[2] The government recognizes that it may not request an additional two-point enhancement for perjury, on top of the enhancement for witness intimidation already recommended. Gov.'s Mem. 9 n.2,

---

[2] A Court may depart from the Guidelines when it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." U.S.S.G. § 5K2.0. As such, a court may impose a two-level enhancement under § 3C1.1 as well as an additional upward adjustment under § 5K2.0 for multiple acts of obstruction if it finds the instances of obstruction "vary from the norm by reason of . . . the frequency of occurrence." *U.S. v. Bey*, Crim. No. 04-269-5, 2006 WL 343220, at *1 (E.D. Pa. Feb. 14, 2006). The government has not requested an enhancement under § 5K2.0, however.

ECF No. 106. While the Guidelines do not allow for such additions, the Court may factor in this second claim of obstruction of justice by perjury in its discretion when considering the factors under 18 U.S.C. § 3553(a).

      In sum, each of the parties' objections and/or requests will be denied. An appropriate Order follows.

                            BY THE COURT:

                            /s/ Juan R. Sánchez
                            Juan R. Sánchez, C.J.